ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
ANTOINE F. RAPHAEL (Cal. SBN. 214919)
Assistant United States Attorney
Chief, Riverside Branch Office
COREY G. LEE (Cal. SBN. 227602)
Assistant United States Attorney
     3880 Lemon Street, Suite 210
     Riverside, California 92501
     Telephone:  (951) 276-6246/6098
     Facsimile:  (951) 276-6202
     E-mail:   antoine.raphael@usdoj.gov
               corey.lee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | ED CR 10-9(A)-VAP |
|---|---|---|
| Plaintiff, | ) | <u>PLEA AGREEMENT FOR DEFENDANT</u> |
| | ) | <u>SALVADOR OROZCO HERNANDEZ,</u> |
| v. | ) | <u>JR.</u> |
| | ) | |
| SALVADOR OROZCO HERNANDEZ, JR. | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

1.   This constitutes the plea agreement between Salvador
Orozco Hernandez, Jr. ("defendant") and the United States
Attorney's Office for the Central District of California ("the
USAO") in the above-captioned case.  This agreement is limited to
the USAO and cannot bind any other federal, state, local, or
foreign prosecuting, enforcement, administrative, or regulatory
authorities.

## DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a) At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and six of the first superseding indictment ("indictment") in <u>United States v. Salvador Orozco Hernandez, Jr.</u>, ED CR 10-9(A)-VAP.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing factors contained in this agreement.

d) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the USAO prior to sentencing.

## THE USAO'S OBLIGATIONS

3. The USAO agrees to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing factors

2

1  contained in this agreement.

2          c) At the time of sentencing, move to dismiss count one

3  of the information filed against defendant on May 19, 2010

4  pursuant to Title 21, United States Code, Section 851.  Defendant

5  agrees, however, that at the time of sentencing the Court may

6  consider the dismissed count of the information in determining

7  the applicable Sentencing Guidelines range, the propriety and

8  extent of any departure from that range, and the sentence to be

9  imposed after consideration of the Sentencing Guidelines and all

10 other relevant factors under 18 U.S.C. § 3553(a).

11         d) At the time of sentencing, provided that defendant

12 demonstrates an acceptance of responsibility for the offenses up

13 to and including the time of sentencing, recommend a two-level

14 reduction in the applicable Sentencing Guidelines offense level,

15 pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,

16 move for an additional one-level reduction if available under

17 that section.

18         e) Recommend that defendant be sentenced to a term of

19 imprisonment no higher than the low end of the applicable

20 Sentencing Guidelines range, provided that the offense level used

21 by the Court to determine that range is 32 or higher and provided

22 that the Court does not depart downward in offense level or

23 criminal history category.  For purposes of this agreement, the

24 low end of the Sentencing Guidelines range is that defined by the

25 Sentencing Table in U.S.S.G. Chapter 5, part A.

26         f) At the time of sentencing, not oppose an argument by

27 defendant, to the extent applicable, under U.S.S.G. § 5G1.3(c),

28 for a sentence concurrent or partially concurrent to the term of

3

1  imprisonment imposed by the Superior Court of San Bernardino
2  County in case number FSB059489.

3  <u>NATURE OF THE OFFENSES</u>

4      4.   Defendant understands that for defendant to be guilty of
5  racketeering conspiracy, as charged in count one (violation of
6  Title 18, United States Code, Section 1962(d)), the following
7  must be true:  (1) an enterprise existed as charged in count one;
8  (2) the enterprise engaged in, or its activities affected,
9  interstate or foreign commerce; (3) the defendant was associated
10 with the enterprise; (4) prior to January 27, 2010 two or more
11 persons reached an agreement or came to an understanding to
12 conduct or participate in the affairs of the enterprise, directly
13 or indirectly, through a pattern of racketeering activity; and
14 (5) the defendant voluntarily and intentionally joined in the
15 agreement or understanding, either at the time it was first
16 reached or at some later time while it was still in existence,
17 and at the time the defendant joined in the agreement or
18 understanding the defendant specifically intended that someone,
19 not necessarily the defendant, would commit two or more
20 racketeering acts as part of a pattern of racketeering activity.

21      a.   An "enterprise" includes any individual,
22 partnership, corporation, association, or other legal entity, and
23 any union or group of individuals associated in fact although not
24 a legal entity.

25      b.   "Racketeering activity" includes, among other
26 acts: (1) any act or threat involving murder, kidnaping, robbery,
27 extortion, or dealing in a controlled substance, which is
28 chargeable under state law and punishable by imprisonment for

4

1  more than one year; (2) any act of witness intimidation in
2  violation of 18 U.S.C. § 1512; and (3) the felonious
3  manufacturing, importing, receiving, concealing, buying, selling
4  or otherwise dealing in a controlled substance (as defined in
5  section 102 of the Controlled Substances Act).

6      c.   A "pattern of racketeering activity" is at least
7  two acts of racketeering activity within ten years of each other
8  that have a relationship to each other plus a threat of
9  continuity.  Conduct forms a pattern if it consists of criminal
10 acts that have the same or similar purposes, results,
11 participants, victims, or methods of commission, or otherwise are
12 interrelated by distinguishing characteristics and are not
13 isolated.

14    Defendant admits that defendant is, in fact, guilty of this
15 offense as described in count one of the first superseding
16 indictment.

17    5.   In order for defendant to be guilty of conspiracy to
18 distribute and possess with intent to distribute at least fifty
19 grams of actual methamphetamine, as charged in count six of the
20 first superseding indictment, in violation of Title 21, United
21 States Code, Section 846, the following must be true: (1)
22 beginning on a date unknown and continuing to on or about
23 January 27, 2010, there was an agreement between two or more
24 persons to commit the crime of distribution or possession with
25 intent to distribute 50 grams or more of actual methamphetamine,
26 as charged in the first superseding indictment; and (2) defendant
27 became a member of the conspiracy knowing of at least one of its
28 objects and intending to help accomplish it.

1  Defendant admits that defendant is, in fact, guilty of this

2  offense as described in count six of the first superseding

3  indictment.

4        6.   Moreover, in order for defendant to be subject to the

5  statutory maximum and statutory minimum sentences set forth

6  below, the government must prove beyond a reasonable doubt with

7  respect to count six that defendant conspired to distribute or

8  possess with intent to distribute at least 50 grams of actual

9  methamphetamine.

10       Defendant admits that defendant, in fact, conspired to

11  distribute and possess with intent to distribute at least 50

12  grams of actual methamphetamine, as described in count six of the

13  first superseding indictment.

14                              <u>PENALTIES</u>

15       7.   Defendant understands that the statutory maximum

16  sentence that the Court can impose for a violation of Title 18,

17  United States Code, Section 1962(d), where the underlying

18  racketeering activity itself carries a maximum term of life

19  imprisonment is: life imprisonment; a five-year period of

20  supervised release; a fine of $250,000 or twice the gross gain or

21  gross loss from the offense, whichever is greatest; and a

22  mandatory special assessment of $100.

23       8.   The statutory maximum sentence that the Court can

24  impose for a violation of Title 21, United States Code, Section

25  846, involving at least 50 grams of actual methamphetamine is:

26  life imprisonment; a life-time period of supervised release; a

27  fine of $4,000,000 or twice the gross gain or gross loss

28  resulting from the offense, whichever is greatest; and a

1  mandatory special assessment of $100.

2      9.    Therefore, that the total maximum sentence for all

3  offenses to which defendant is pleading guilty is: life

4  imprisonment; a lifetime period of supervised release; a fine of

5  $4,250,000 or twice the gross gain or gross loss resulting from

6  the offenses, whichever is greatest; and a mandatory special

7  assessment of $200.

8      10.   The statutory mandatory minimum sentence that the Court

9  must impose for a violation of Title 21, United States Code,

10 Section 846 involving at least 50 grams of actual methamphetamine

11 is: 10-years' imprisonment and a five-year period of supervised

12 release.   The statutory mandatory minimum sentence that the court

13 must impose for a violation of Title 21, United States Code,

14 Section 846 involving at least 50 grams of actual methamphetamine

15 committed after a prior conviction for a felony drug offense has

16 become final, as alleged in the information filed pursuant to

17 Title 21, United States Code, Section 851, on May 19, 2010, is:

18 20-years' imprisonment, a ten-year period of supervised release,

19 and a mandatory special assessment of $100.

20     11.   Defendant understands that supervised release is a

21 period of time following imprisonment during which defendant will

22 be subject to various restrictions and requirements.   Defendant

23 understands that if defendant violates one or more of the

24 conditions of any supervised release imposed, defendant may be

25 returned to prison for all or part of the term of supervised

26 release authorized by statute for the offense that resulted in

27 the term of supervised release.

28     12.   Defendant understands that, by pleading guilty,

7

1   defendant may be giving up valuable government benefits and

2   valuable civic rights, such as the right to vote, the right to

3   possess a firearm, the right to hold office, and the right to

4   serve on a jury.  Defendant understands that once the court

5   accepts defendant's guilty plea, it will be a federal felony for

6   defendant to possess a firearm or ammunition.  Defendant

7   understands that the conviction in this case may also subject

8   defendant to various other collateral consequences, including but

9   not limited to revocation of probation, parole, or supervised

10  release in another case and suspension or revocation of a

11  professional license.  Defendant understands that unanticipated

12  collateral consequences will not serve as grounds to withdraw

13  defendant's guilty pleas.

14      13.   Defendant understands that, if defendant is not a

15  United States citizen, the felony conviction in this case may

16  subject defendant to removal, also known as deportation, which

17  may, under some circumstances, be mandatory.  The court cannot,

18  and defendant's attorney also may not be able to, advise

19  defendant fully regarding the immigration consequences of the

20  felony conviction in this case.  Defendant understands that by

21  entering a guilty plea defendant waives any claim that unexpected

22  immigration consequences may render defendant's guilty pleas

23  invalid.

24      14.   Defendant understands that under 21 U.S.C. § 862a,

25  defendant will not be eligible for assistance under state

26  programs funded under the Social Security Act or Federal Food

27  Stamp Act or for federal food stamp program benefits, and that

28

1  any such benefits or assistance received by defendant's family
2  members will be reduced to reflect defendant's ineligibility.

### FACTUAL BASIS

4       15.   Defendant and the USAO agree and stipulate to the
5  "Statement of Facts" attached hereto as "Exhibit A" and
6  incorporated herein.   This statement of facts is sufficient to
7  support a plea of guilty to the charges described in this
8  agreement and to establish the sentencing guideline factors set
9  forth below.   It is not meant to be a complete recitation of all
10 facts relevant to the underlying criminal conduct or all facts
11 known to either party that relate to that conduct.

### SENTENCING FACTORS

13      16.   Defendant understands that in determining defendant's
14 sentence the Court is required to consider the factors set forth
15 in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence
16 and sentencing range established under the Sentencing Guidelines.
17 Defendant understands that the Sentencing Guidelines are advisory
18 only, that defendant cannot have any expectation of receiving a
19 sentence within the Sentencing Guidelines range, and that after
20 considering the Sentencing Guidelines and the other § 3553(a)
21 factors, the Court will be free to exercise its discretion to
22 impose any sentence it finds appropriate up to the maximum set by
23 statute for the crimes of conviction.

24      17.   Defendant and the USAO agree to the following
25 applicable Sentencing Guidelines factors:

26      COUNT ONE (18 U.S.C. §§ 1962(d))
        (50 grams of actual methamphetamine)

28      Base Offense Level      :    32    U.S.S.G. § 2E1.1(a)(2)/
                                           U.S.S.G. § 2D1.1(c)(4)

9

1 <u>COUNT SIX (21 U.S.C. § 846)</u>
2 <u>(50 grams of actual methamphetamine)</u>

3 Base Offense Level       :    32   U.S.S.G. § 2D1.1(c)(4)

4 Defendant and the USAO reserve the right to argue that additional

5 specific offense characteristics, adjustments, and departures

6 under the Sentencing Guidelines are appropriate.  Defendant

7 understands that defendant's offense level could be increased if

8 defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.

9 If defendant's offense level is so altered, defendant and the

10 USAO will not be bound by the agreement to Sentencing Guideline

11 factors set forth above.

12     18.  Defendant understands that there is no agreement as to

13 defendant's criminal history or criminal history category.

14     19.  Defendant and the USAO reserve the right to argue for a

15 sentence outside the sentencing range established by the

16 Sentencing Guidelines based on the factors set forth in 18 U.S.C.

17 § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

18                 <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19     20.  Defendant understands that by pleading guilty,

20 defendant gives up the following rights:

21           a) The right to persist in a plea of not guilty.

22           b) The right to a speedy and public trial by jury.

23           c) The right to the assistance of an attorney at trial,

24 including the right to have the Court appoint an attorney to

25 represent defendant at trial.  Defendant understands, however,

26 that, despite defendant's guilty pleas, defendant retains the

27 right to be represented by an attorney -- and, if necessary, to

28

1   have the Court appoint an attorney if defendant cannot afford one

2   -- at every other stage of the proceeding.

3          d) The right to be presumed innocent and to have the

4   burden of proof placed on the government to prove defendant

5   guilty beyond a reasonable doubt.

6          e) The right to confront and cross-examine witnesses

7   against defendant.

8          f) The right to testify on defendant's own behalf and

9   present evidence in opposition to the charges, including calling

10  witnesses and subpoenaing those witnesses to testify.

11         g) The right not to be compelled to testify, and, if

12  defendant chose not to testify or present evidence, to have that

13  choice not be used against defendant.

14         h) Any and all rights to pursue any affirmative

15  defenses, Fourth Amendment or Fifth Amendment claims, and other

16  pretrial motions that have been filed or could be filed.

17  <u>WAIVER OF DNA TESTING</u>

18      21.   Defendant has been advised that the government has in

19  its possession the following items of physical evidence that

20  could be subjected to DNA testing: letters.  Defendant

21  understands that the government does not intend to conduct DNA

22  testing of any of these items for DNA testing and does not intend

23  to conduct any further DNA testing of those items or any other

24  items.  Defendant understands: (a) before entering guilty pleas

25  pursuant to this agreement, defendant could request DNA testing

26  of evidence in this case; and (b) with respect to the offenses to

27  which defendant is pleading guilty pursuant to this agreement,

28  defendant would have the right to request DNA testing of evidence

1  after conviction under the conditions specified in 18 U.S.C. §

2  3600.   Knowing and understanding defendant's right to request DNA

3  testing, defendant voluntarily gives up that right with respect

4  to both the specific items listed above and any other items of

5  evidence there may be in this case that might be subject to DNA

6  testing.   Defendant understands that by giving up this right: (a)

7  defendant is giving up any ability to request DNA testing of

8  evidence in this case in the current proceeding, in any

9  proceeding after conviction under 18 U.S.C. § 3600, and in any

10 other proceeding of any type; and (b) defendant will never have

11 another opportunity to have the evidence in this case, whether or

12 not listed above, submitted for DNA testing, and will never have

13 an opportunity to employ the results of DNA testing to support a

14 claim that defendant is innocent of the offenses to which

15 defendant is pleading guilty.

16                    WAIVER OF APPEAL OF CONVICTION

17      22.   Defendant understands that, with the exception of an

18 appeal based on a claim that defendant's guilty pleas were

19 involuntary, by pleading guilty defendant is waiving and giving

20 up any right to appeal defendant's convictions on the offenses to

21 which defendant is pleading guilty.

22             LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23      23. Defendant agrees that, provided the Court imposes a

24 total term of imprisonment within or below the range

25 corresponding to an offense level of 38 and the criminal history

26 category calculated by the Court, defendant gives up the right to

27 appeal all of the following: : (a) the procedures and

28 calculations used to determine and impose any portion of the

                                   12

1  sentence; (b) the term of imprisonment imposed by the Court; (c)
2  the fine imposed by the court, provided it is within the
3  statutory maximum; (d) the term of probation or supervised
4  release imposed by the Court, provided it is within the statutory
5  maximum; and (e) any of the following conditions of probation or
6  supervised release imposed by the Court: the standard conditions
7  set forth in General Orders 318, 01-05, and/or 05-02 of this
8  Court; the drug testing conditions mandated by 18 U.S.C. §§
9  3563(a)(5) and 3583(d); and the alcohol and drug use conditions
10  authorized by 18 U.S.C.
11  § 3563(b)(7).
12      24.  The USAO agrees that, provided (a) all portions of the
13  sentence are at or above the statutory minimum and at or below
14  the statutory maximum specified above and (b) the Court imposes a
15  term of imprisonment of no less than 120 months, the USAO gives
16  up its right to appeal any portion of the sentence.
17                  RESULT OF WITHDRAWAL OF GUILTY PLEA
18      25.  Defendant agrees that if, after entering guilty pleas
19  pursuant to this agreement, defendant seeks to withdraw and
20  succeeds in withdrawing defendant's guilty pleas on any basis
21  other than a claim and finding that entry into this plea
22  agreement was involuntary, then (a) the USAO will be relieved of
23  all of its obligations under this agreement.
24                     EFFECTIVE DATE OF AGREEMENT
25      26.  This agreement is effective upon signature and
26  execution of all required certifications by defendant,
27  defendant's counsel, and an Assistant United States Attorney.
28

1                          BREACH OF AGREEMENT

2        27.   Defendant agrees that if defendant, at any time after

3   the signature of this agreement and execution of all required

4   certifications by defendant, defendant's counsel, and an

5   Assistant United States Attorney, knowingly violates or fails to

6   perform any of defendant's obligations under this agreement ("a

7   breach"), the USAO may declare this agreement breached.  All of

8   defendant's obligations are material, a single breach of this

9   agreement is sufficient for the USAO to declare a breach, and

10  defendant shall not be deemed to have cured a breach without the

11  express agreement of the USAO in writing.  If the USAO declares

12  this agreement breached, and the Court finds such a breach to

13  have occurred, then: (a) if defendant has previously entered

14  guilty plea pursuant to this agreement, defendant will not be

15  able to withdraw the guilty plea, and (b) the USAO will be

16  relieved of all its obligations under this agreement.

17             COURT AND PROBATION OFFICE NOT PARTIES

18       28.   Defendant understands that the Court and the United

19  States Probation Office are not parties to this agreement and

20  need not accept any of the USAO's sentencing recommendations or

21  the parties' agreements to facts or sentencing factors.

22       29.   Defendant understands that both defendant and the USAO

23  are free to: (a) supplement the facts by supplying relevant

24  information to the United States Probation Office and the Court,

25  (b) correct any and all factual misstatements relating to the

26  Court's Sentencing Guidelines calculations, and (c) argue on

27  appeal and collateral review that the Court's Sentencing

28  Guidelines calculations are not error, although each party agrees

                                14

1   to maintain its view that the calculations in paragraph 17 are

2   consistent with the facts of this case.  While this paragraph

3   permits both the USAO and defendant to submit full and complete

4   factual information to the United States Probation Office and the

5   Court, even if that factual information may be viewed as

6   inconsistent with the facts agreed to in this agreement, this

7   paragraph does not affect defendant's and the USAO's obligations

8   not to contest the facts agreed to in this agreement.

9       30.  Defendant understands that even if the Court ignores

10  any sentencing recommendation, finds facts or reaches conclusions

11  different from those agreed to, and/or imposes any sentence up to

12  the maximum established by statute, defendant cannot, for that

13  reason, withdraw defendant's guilty pleas, and defendant will

14  remain bound to fulfill all defendant's obligations under this

15  agreement.  Defendant understands that no one -- not the

16  prosecutor, defendant's attorney, or the Court -- can make a

17  binding prediction or promise regarding the sentence defendant

18  will receive, except that it will be within the statutory

19  maximum.

20                    NO ADDITIONAL AGREEMENTS

21      31.  Defendant understands that, except as set forth herein,

22  there are no promises, understandings, or agreements between the

23  USAO and defendant or defendant's attorney, and that no

24  additional promise, understanding, or agreement may be entered

25  into unless in a writing signed by all parties or on the record

26  in court.

27  ///

28  ///

1        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        32.   The parties agree that this agreement will be

3    considered part of the record of defendant's guilty plea hearing

4    as if the entire agreement had been read into the record of the

5    proceeding.

6    AGREED AND ACCEPTED

7    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA
8
     ANDRÉ BIROTTE JR.
9    United States Attorney

10

11   _____          11/28/11
                                              _____
     ANTOINE F. RAPHAEL                        Date
12   COREY G. LEE
     Assistant United States Attorneys
13

14   _____          11·28·11
                                              _____
15   SALVADOR OROZCO HERNANDEZ, JR.            Date
     Defendant
16

17   _____          11/28/11
                                              _____
18   W. ANTHONY WILLOUGHBY                     Date
     JASON JAMES BUCCAT
19   Attorneys for Defendant
     SALVADOR OROZCO HERNANDEZ, JR.
20

21

22

23

24

25

26

27

28

                                16

1  <u>CERTIFICATION OF DEFENDANT</u>

2      I have read this agreement in its entirety.  I have had

3  enough time to review and consider this agreement, and I have

4  carefully and thoroughly discussed every part of it with my

5  attorney.  I understand the terms of this agreement, and I

6  voluntarily agree to those terms.  I have discussed the evidence

7  with my attorney, and my attorney has advised me of my rights, of

8  possible pretrial motions that might be filed, of possible

9  defenses that might be asserted either prior to or at trial, of

10 the sentencing factors set forth in 18 U.S.C. § 3553(a), of

11 relevant Sentencing Guidelines provisions, and of the

12 consequences of entering into this agreement.  No promises,

13 inducements, or representations of any kind have been made to me

14 other than those contained in this agreement.  No one has

15 threatened or forced me in any way to enter into this agreement.

16 I am satisfied with the representation of my attorney in this

17 matter, and I am pleading guilty because I am guilty of the

18 charges and wish to take advantage of the promises set forth in

19 this agreement, and not for any other reason.

20

21 _____          _11·28·11_

22 SALVADOR OROZCO HERNANDEZ, JR.             Date
   Defendant

23

24

25

26

27

28

17

1

## CERTIFICATION OF DEFENDANT'S ATTORNEY

2       I am SALVADOR OROZCO HERNANDEZ, JR.'s attorney.  I have

3  carefully and thoroughly discussed every part of this agreement

4  with my client.  Further, I have fully advised my client of his

5  rights, of possible pretrial motions that might be filed, of

6  possible defenses that might be asserted either prior to or at

7  trial, of the sentencing factors set forth in 18 U.S.C. §

8  3553(a), of relevant Sentencing Guidelines provisions, and of the

9  consequences of entering into this agreement.  To my knowledge:

10 no promises, inducements, or representations of any kind have

11 been made to my client other than those contained in this

12 agreement; no one has threatened or forced my client in any way

13 to enter into this agreement; my client's decision to enter into

14 this agreement is an informed and voluntary one; and the factual

15 basis set forth in this agreement is sufficient to support my

16 client's entry of guilty pleas pursuant to this agreement.

17

18 _____          11/28/11

19 W. ANTHONY WILLOUGHBY          Date
   JASON JAMES BUCCAT

20 Attorneys for Defendant
   SALVADOR OROZCO HERNANDEZ, JR.

21

22

23

24

25

26

27

28

18

## EXHIBIT A

### STATEMENT OF FACTS

Unless otherwise noted, all factual statements contained in this "Statement of Facts" apply to the time periods detailed in the indictment in this case and to all counts defendant is pleading guilty to.

The Mexican Mafia, also known as "La Eme" or "Eme," is the most powerful Hispanic gang within the California prison system and exerts control over the activities of Hispanic street gangs in Southern California conducted outside the prison system through its ability to order the assault or murder of members of those street gangs who are incarcerated.  Members of the Mexican Mafia come from the ranks of local Hispanic street gangs.

The Eastside Riva Gang ("ESR") is a street gang that operates in the City of Riverside.  ESR is an organization engaged in, among other things, conspiracy to distribute controlled substances, distribution of controlled substances, murder, attempted murder, conspiracy to commit murder, and robbery.

Defendant SALVADOR OROZCO HERNANDEZ, JR., also known as ("aka") "Toro" ("defendant") was a member of the Mexican Mafia.

The Mexican Mafia and ESR are criminal street gangs that consist of a group of individuals associated in fact.  Defendant agrees that the Mexican Mafia and ESR are an "enterprise" within the meaning of Title 18, United States Code, §§ 1961, et seq. Defendant further agrees that the activities of the Mexican Mafia and ESR affect interstate and foreign commerce.

1    Members and associates of the ESR pay a tribute,
2  referred to as "taxes" or "rent," to members and associates of
3  the Mexican Mafia in order to maintain control over ESR's
4  territory, and in order to assure protection for ESR members once
5  they enter California state or federal penal institutions.   The
6  Mexican Mafia exerts control over Southern California Hispanic
7  street gangs by placing a "green light" on any Southern
8  California Hispanic street gang that fails to pay drug "taxes" to
9  the Mexican Mafia or otherwise follow the Mexican Mafia's
10 instructions.   Once a green light is placed on a particular gang,
11 all other Southern California Hispanic street gangs are
12 authorized to assault and murder members of the gang receiving
13 the green light.   By paying drug taxes to and otherwise following
14 the dictates of the Mexican Mafia, Southern California Hispanic
15 street gangs such as ESR avoid receiving a green light, which
16 ensures the Eme's protection of ESR members who are incarcerated.

17    Mexican Mafia members, called "carnales" or "brothers,"
18 typically divide the territory of Southern California Hispanic
19 street gangs between them.   At any given time, one or more
20 members of the Mexican Mafia has control over ESR's territory and
21 is empowered to receive the drug "taxes" from ESR and to issue
22 orders and instructions to ESR.   A Mexican Mafia member with
23 authority over ESR's territory typically enlists the assistance
24 of an ESR member and authorizes that ESR member to act in the
25 name of the Mexican Mafia member.   Such authorization by the
26 Mexican Mafia member is known as "giving the keys" to the ESR
27 member.   An ESR member who has received the "keys" from a Mexican
28 Mafia member is empowered to collect drug "taxes" for that

Mexican Mafia member from ESR members and drug traffickers selling drugs in ESR territory, resolve disputes among ESR members, issue orders to ESR members, and order assaults and murders.

ESR is both loyal to and subservient to the Mexican Mafia. ESR members, oftentimes in prison where they have access to contact with incarcerated members of the Mexican Mafia, directed ESR members not in prison to comply with Eme directives at the risk of retribution.

As the Mexican Mafia member in control of ESR, defendant issued directives to senior ESR members and appointed "tax collectors" to collect money derived from ESR's criminal activities, including drug distribution in ESR territory.

During the time period mentioned in the indictment, within the Central District of California, defendant knowingly and intentionally agreed to conduct, or participate in the conduct of, the affairs of the Mexican Mafia and ESR by facilitating the felonious distribution of controlled substances, namely at least 50 grams of actual methamphetamine, in violation of both California law and Title 21, United States Code, Sections 841(a)(1),(b)(1)(A) and 846 and by collecting the proceeds (or taxes) from the sale of at least 50 grams of actual methamphetamine. Defendant further agreed that other members and associates of the Mexican Mafia and ESR would commit at least two racketeering acts within ten years of each other, including the distribution of methamphetamine, in the conduct of the affairs of the Mexican Mafia and ESR.

1   Some of the overt acts defendant committed in furtherance of
2   the conspiracies alleged in the counts defendant is pleading
3   guilty to include:

4   a.   On or about April 3, 2009, using coded language in a
5   letter to a co-conspirator, defendant told that co-conspirator
6   that a co-defendant was working on behalf of defendant and that
7   those gang members loyal to that co-conspirator should leave the
8   co-defendant alone.

9   b.   On or about April 7, 2009, using coded language in a
10  letter to a co-defendant, defendant stated that he (HERNANDEZ) is
11  glad that the co-defendant is in the community providing
12  defendant's associate with the proceeds from drug sales, that he
13  (defendant HERNANDEZ) is aware that the co-defendant had problems
14  with other gang members who questioned the co-defendant's Eme
15  association, and that he (defendant HERNANDEZ) wrote a letter to
16  the individual who was giving the co-defendant problems
17  expressing his (defendant HERNANDEZ's) displeasure with that.

18  <u>Additional Conduct Pertaining to the Methamphetamine
    Trafficking Conspiracy</u>
19
20  Beginning on an unknown date and continuing until at least
    January 27, 2010, within the Central District of California,
21
    defendant agreed with other co-conspirators, to distribute and
22
    possess with intent to distribute at least 50 grams of actual
23
    methamphetamine.  At all times relevant to the indictment, it was
24
    foreseeable to defendant that at least 50 grams of actual
25
    methamphetamine was being distributed by other co-conspirators.
26

27

28

22